IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMELIA PATRICIA CROWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09 CV 1921 |
| ) | |
| BANK OF AMERICA PENSION PLAN ) | |
| FOR LEGACY COMPANIES and BANK ) | |
| OF AMERICA CORPORATION, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Amelia Patricia Crowell ("Crowell") alleges that defendants Bank of America Pension Plan for Legacy Companies and Bank of America Corporation (together "Defendants") are liable to her for certain pension benefits. (Dkt. No. 6 ("Am. Compl.") ¶ 4.) Crowell's claims for pension benefits arise under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a), and are brought before this court pursuant to 29 U.S.C. § 1132(e). Now pending before the court are "Defendants' Motion for Judgment Pursuant to Fed. R. Civ. P. 52; and, in the alternative, for Summary Judgment under Fed. R. Civ. P. 56" (Dkt. No. 55) and "Plaintiff's Motion for Summary Judgment." (Dkt. No 50). For the reasons set forth below, Defendants' motion for summary judgment is granted pursuant to Federal Rule of Civil Procedure 56.

BACKGROUND

The issues in this ERISA pension benefits case date back to Crowell's employment with Exchange National Bank ("Exchange") in Chicago, Illinois during the 1980s. In June of 1989,

1

Crowell took leave from her employment with Exchange and began receiving long-term disability benefits through Exchange. (Dkt. No. 57 ("Defs.' SMF") ¶ 9.) Due to her long-term disability, Crowell never returned to work after June, 1989. (*Id.*) On April 1, 1990, approximately ten months after Crowell began her disability leave, Exchange merged with LaSalle National Bank ("LaSalle"). (*Id.* ¶ 10.) On October 1, 2007, over eight years after Crowell began her disability leave, LaSalle then merged with defendant Bank of America Corporation ("Bank of America") when Bank of America purchased LaSalle's parent company. (*Id.* ¶ 3.)

It is undisputed that Exchange maintained a pension plan during Crowell's employment with Exchange, and that this plan was terminated in 1985.[1] (*Id.* ¶ 21.) LaSalle also maintained a pension plan during the relevant time period, originally called the "ABN AMRO Group Retirement Plan." (*Id.* ¶ 12.) After Bank of America purchased LaSalle's parent company, this plan was renamed the "Bank of America Pension Plan for Legacy LaSalle," and it is currently known as the "Bank of America Pension Plan for Legacy Companies." (*Id.*) Counsel for the parties have identified no relevant change in language among any of these plans, nor do they distinguish between the different plans in their analysis of Crowell's claims. Although the only named plan defendant in this case is the "Bank of America Pension Plan for Legacy Companies," for ease of use the court will employ the term "Pension Plan" in this opinion to refer collectively to all three of these plans.

For approximately fourteen years, from 1994 through 2008, Crowell periodically received mailings from LaSalle and Bank of America, discussing the status of various welfare benefits programs. (*Id.* ¶ 26.) These mailings included "Summary Annual Reports" for the

---

[1] Although both parties agree that the Exchange pension plan was terminated in 1985, according to the federal Pension Benefits Guaranty Corporation, neither party explains the impact of this termination on employees who had been enrolled in the plan.

Pension Plan, and "Notices to Interested Parties in the ABN AMRO Group Retirement and Group Profit Sharing and Savings Plan."[2]  (*Id.*)  Believing that the receipt of these notices indicated her enrollment in the Pension Plan, Crowell applied to the LaSalle administrator for benefits arising under the Pension Plan in August, 2008.  (Am. Compl. ¶ 13; Defs.' SMF ¶ 16.)

The administrator of the Pension Plan determined that Crowell did not meet the criteria of an "Employee" as defined by the plan,[3] and thus was not eligible for benefits.  (Defs.' SMF ¶¶ 19-20.)  In an August 15, 2008 letter of denial, the plan administrator explained that the Pension Plan defined an "Employee" as a "person who is regularly engaged in rendering personal services under the direction or control of his Employer who is compensated for his services on a salary paid at regular intervals."  (*Id.* ¶ 20.)  Because Crowell had begun long-term disability in 1989, the plan administrator concluded that Crowell never became an "Employee" of LaSalle as defined by the Pension Plan after the merger of Exchange and LaSalle in April, 1990.  (*Id.*)

On September 18, 2008, Crowell appealed the decision of the plan administrator to the Bank of America Benefits Appeals Committee.  (*Id.* ¶ 22.)  The Benefits Appeals Committee affirmed the plan administrator's findings and upheld the denial of Crowell's claimed pension benefits on November 25, 2008.  (*Id.* ¶ 29.)  The Benefits Appeals Committee noted the Pension Plan defined an "Employee" as: "a natural person who is (i) regularly engaged in rendering personal services under the direction or control of an Employer, and (ii) compensated for his services at periodic intervals by an Employer," and concluded that Crowell "never satisfied the

---

[2] The parties agree that the "ABN AMRO Group Profit Sharing and Savings Plan" incorporated Exchange's profit sharing program, in which Crowell had been a participant. (Defs.' SMF ¶ 25.)
[3] Although the August 15, 2008 letter of denial recognizes that Crowell is claiming benefits under the "Bank of American [sic] Pension Plan for Legacy LaSalle," it inexplicably cites the "Retirement Plan for Employees of Algemene Bank Nederland N.V. and LaSalle National Bank" for the definition of "Employee."  (Defs.' Ex. A-1, D-0027.)  This discrepancy appears to be immaterial, as both plans' definitions of "Employee" are substantively equivalent.

definition of 'Employee' under the Plan." (*Id.* ¶¶ 29-30.) Without citing to the Pension Plan itself, the Benefits Appeals Committee reasoned that "[o]nly Employees could become Participants under the Plan and accrue a benefit." (*Id.* ¶ 32; *see also* Defs.' Ex. A-1, D-0001.)

On March 27, 2009, Crowell filed this action seeking pension benefits from Defendants based on (1) the Pension Plan, (2) a subsequent course of mailings that modified the terms of the Pension Plan, or (3) a theory of estoppel. (Am. Compl. ¶¶ 17-19.)

Further complicating matters, in late 2009, after the Benefits Appeals Committee upheld the denial of Crowell's claimed pension benefits and after the March 27, 2009 filing of this lawsuit, Crowell received two letters on Bank of America letterhead, addressed to her from the "Bank of America Personnel Center." (Dkt. No. 52 ("Crowell's SMF") ¶¶ 33-34.) Each letter informed Crowell "[o]ur records indicate that you have a benefit due from the Bank of America Pension Plan . . . ." (*Id.*; *see also* Crowell's Exs. F, G.) The Director of Client Services for Bank of America's recordkeeping service, Paul Giguere, has stated under penalty of perjury that Crowell was "erroneously included" in these mass mailings. (Defs.' SMF ¶ 38.)

APPLICABLE LEGAL STANDARDS

1. Federal Rules of Civil Procedure 52 and 56

Defendants seek judgment in their favor on Crowell's claims pursuant to Federal Rule of Civil Procedure 52, or in the alternative, pursuant to Federal Rule of Civil Procedure 56. Rule 52 permits a "trial on the papers" in which the court functions as the factfinder and states conclusions of law separately. *LaBarge v. Life Ins. Co. of N. Am.*, No. 00 C 0512, 2001 WL 109527, at *1 (N.D. Ill. Feb. 6, 2001) (Holderman, J.). This court has suggested in the past that Rule 52 may be the more appropriate vehicle by which to address ERISA claims, rather than cross motions for summary judgment. *Id.*; *see also*, *Juszynski v. Life Ins. Co. of N. Am.*, No. 06

CV 5503, 2008 WL 877977, at *5 (N.D. Ill. Mar. 28, 2008) (Lefkow, J.) (finding that Rule 52 is more appropriate than Rule 56, "given the fact-intensive issues on which [an ERISA] case turns"); *Marshall v. Blue Cross Blue Shield Ass'n*, No. 04 C 6395, 2006 WL 2661039, at *1-2 (N.D. Ill. Sept. 13, 2006) (Filip, J.) (collecting cases endorsing the use of Rule 52 as a cost saving and efficient method for both parties); *Crespo v. Unum Life Ins. Co. of Am.*, 294 F. Supp. 2d 980, 991 (N.D. Ill. 2003) (Denlow, M.J.) (recognizing both the efficiency of "skipping cross-motions for summary judgment and proceeding directly to a trial on the papers" and the "mental gymnastics" involved in applying the arbitrary and capricious standard under Rule 56).

In light of this court's determination that Crowell's estoppel claim will be subject to a *de novo* standard of review (*see* Dkt. No. 45 ("5/12/2010 Order")), Crowell objects to the disposition of her claims under Rule 52. Defendants do not respond to Crowell's argument or otherwise explain why Rule 52 should be applied in this case. With no agreement between the parties on this procedural question, and with cross motions for summary judgment pending before the court, the court will address both motions under Federal Rule of Civil Procedure 56.

Rule 56(a) states that summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(a); *Ortiz v. Jordan*, 131 S. Ct. 884, 891 (2011). A party seeking summary judgment bears the responsibility of identifying any pleadings, depositions, answers to interrogatories, admissions on file, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC,* 622 F.3d 816, 822 (7th Cir. 2010). In determining the existence of any issue of material fact, the court should construe all

5

facts in the light most favorable to the non-moving party. *Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 683 (7th Cir. 2000). "Where the non-moving party bears the burden of proof on an issue at trial and the motion challenges that issue, the non-moving party must set forth specific facts showing that there is a genuine issue for trial." *Estate of Davis v. Wells Fargo Bank*, No. 10-1549, 2011 WL 93030, at *7 (7th Cir. Jan. 12, 2011).

When parties file cross motions for summary judgment, both parties believe they are entitled to judgment without a trial, but neither party is waiving their right to a trial. *Miller v. LeSea Broad., Inc.*, 87 F.3d 224, 230 (7th Cir. 1996). Unlike a trial on the papers under Rule 52, a judge is not required to enter a judgment for either party when faced with cross motions for summary judgment. *Crespo,* 294 F. Supp. 2d at 991.

2.  Standard of Review Under ERISA

The court reviews eligibility decisions of employee benefit plan administrators pursuant to § 1132(a)(1)(B) of ERISA. The standard of review applied to the administrator's decision depends on whether the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility, or construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). This court has previously considered the nature of the plan administrator's discretion in determining eligibility for benefits under the Pension Plan, and has determined that the "arbitrary and capricious" standard of review is appropriately applied to the decision of the Benefits Appeals Committee. (5/12/2010 Order 4-5.)

Under the arbitrary and capricious standard, a plan administrator's decision will not be overturned, "absent special circumstances such as fraud or bad faith, if 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Exbom v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1142 (7th Cir. 1990) (quoting *Pokratz*

*v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985)). In other words, a plan administrator's decision may be overturned only if the decision is "downright unreasonable." *Mote v. Aetna Life Ins. Co.,* 502 F.3d 601, 606 (7th Cir. 2007) (citations omitted). In reviewing the reasons behind a denial of benefits, the court looks only to ensure that "the decision has rational support in the record." *Black v. Long Term Disability Ins.*, 582 F.3d 738, 745 (7th Cir. 2009).

As explained in this court's May 12, 2010 order, because the Benefits Appeals Committee did not rule on Crowell's estoppel argument, the court reviews this element of Crowell's claim *de novo*. (5/12/2010 Order at 5-6.)

ANALYSIS

1.  Review of the Benefits Appeals Committee's Decision

A plan administrator is obligated to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I] and [Title IV] of [ERISA]." 29 U.S.C. § 1104(a)(1)(D). In this case, the Benefits Appeals Committee reasonably relied on the language of the Pension Plan in concluding that Crowell was not an "Employee" as defined by the plan. The Pension Plan defines "Employee" as "a natural person who is (i) regularly engaged in rendering personal services under the direction or control of an Employer, and (ii) compensated for his services at periodic intervals by an employer." (Defs.' SMF ¶ 30.) The Benefits Appeals Committee noted that Crowell had been on long-term disability since 1989, and it reasonably concluded that Crowell had never been an active employee "regularly engaged in rendering personal services" for LaSalle. Moreover, the Benefits Appeals Committee's conclusion that Crowell could not have become a "Participant" in the Pension Plan has rational support in the plain language of the Pension Plan. The Pension Plan defines "Participant" as "an Employee who becomes a

7

Participant pursuant to Article 2 and who continues to be entitled to any benefits under the Plan." (Defs.' SMF ¶ 14.) In other words, to become a "Participant" an individual must first be an "Employee."

Crowell cites no language from the Pension Plan that contradicts the Benefits Appeals Committee's interpretation of the terms "Employee" and "Participant." To the extent Crowell argues that an unidentified "merger document" could have identified her as a plan participant, (*see* Dkt. No. 60 ("Crowell's Resp.") at 3; Dkt. No. 51 ("Crowell's Mem.") at 11-12), the court finds that Crowell's speculation is not based on a material fact in the record and is, therefore, insufficient to create a genuine issue of material fact requiring trial. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) ("our favor toward the nonmoving party does not extend to drawing '[i]nferences that are supported by only speculation or conjecture'") (citation omitted).

Crowell also argues that the various mailings she received served to alter the terms of the Pension Plan to include her as a Participant. Crowell made this argument to the Benefits Appeals Committee, but the Benefits Appeals Committee declined to address the contents of the mailings on the grounds that "[t]here are no exceptions to the terms of the Plan." (Defs.' SMF ¶ 34.) Crowell cites no fact in the record requiring the plan administrator to look outside the plan language. Likewise, Crowell has pointed to no evidence[4] that suggests the Benefits Appeals Committee's interpretation of the scope of its authority was unreasonable. Construing the facts in the record before the court in the light most favorable to Crowell, the court cannot say that the

---

[4] The court is not persuaded that any of the mailings received by Crowell before the November 25, 2008 denial of benefits can be reasonably viewed as a written promise by a fiduciary to alter or vary the terms of the Pension Plan. *See Orth v. Wisconsin State Employees Union Counsel 24,* 546 F.3d 868 (7th Cir. 2008). As discussed in detail below, these mailings do not suggest a knowing, intentional promise by Defendants to include Crowell as a Participant in the Pension Plan.

8

Benefits Appeals Committee's decision to deny Crowell's claimed pension benefits was arbitrary and capricious.

2.  Crowell's Estoppel Claim

The bulk of Crowell's argument focuses on her theory of equitable estoppel and her claim for equitable relief under 29 U.S.C. § 1132(a)(3)(B). The Seventh Circuit has not explicitly recognized the application of equitable estoppel to ERISA claims involving employer-funded pension plans. *See Davis v. Combes,* 294 F.3d 931, 939 (7th Cir. 2002) (noting that the court has "had no occasion to decide whether estoppel might ever apply" outside the context of an unfunded, single-employer welfare benefit plan); *but see Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007) (applying estoppel analysis to employer-funded pension plan without further discussion). Although estoppel principles generally apply to all legal claims to prevent a party from benefitting from its own misrepresentations, courts have been hesitant to apply the doctrine in ERISA cases. *See Black v. TIC Inv. Corp.*, 900 F.2d 112, 115 (7th Cir. 1990). The primary concern is that issues of actuarial soundness "present special obstacles to the application of estoppel principles to an ERISA plan." *Shields v. Local 705, Int'l Broth. of Teamsters Pension Plan*, 188 F.3d 895, 899 (7th Cir. 1999). When a plan has been calculated to provide for an exact amount of benefit payouts, any award of benefits based on a theory of estoppel will deplete the common fund and result in a deficiency for the remaining plan participants. *Black,* 900 F.2d at 115.

The court need not decide this issue for purposes of ruling on the pending Rule 56 motions in this case. Defendants contend that even if equitable estoppel can be generally applied to an employer-funded pension plan, such as the Pension Plan, Crowell has failed to establish a successful estoppel claim. The court agrees.

9

To prevail on her equitable estoppel claim, Crowell must prove: 1) a knowing misrepresentation; 2) made in writing; 3) on which she reasonably relied; 4) to her detriment. *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir. 1999). The Seventh Circuit has stressed that, given the reliance on the written plan as governing any disputes, individuals can only estop an employer from enforcing the plan's written terms in "extreme circumstances." *Kannapien,* 507 F.3d at 636.

A.  Knowing Misrepresentation Made in Writing

On the first element of her equitable estoppel claim, Crowell argues that Defendants represented she was both an "Employee" and a "Participant" in the Pension Plan when "[y]ear after year, Ms. Crowell received document after document addressed as 'Dear Employee,' 'Dear Plan Participant,' 'To All Employees,' etc." (Crowell's Mem. 3.) Defendants contend that the mailings never referred to Crowell specifically as a Participant in the Pension Plan, but rather, they were addressed and sent to participants in "one or more employee benefit plans." (Dkt. No. 63 ("Defs.' Resp.") at 10-11.)

Viewing the evidence in the light most favorable to Crowell, a reasonable factfinder could conclude Defendants misrepresented to Crowell that she was a Participant in the Pension Plan. For example, the August 27, 1998 "Notice to Interested Parties" states that it is being sent "to all eligible participants in the ABN AMRO Group Retirement Plan and ABN AMRO Group Profit Sharing and Savings Plan," without distinguishing between these two separate plans. (Crowell's SMF ¶ 15.) A similar notice was sent to Crowell on August 31, 2000. (*Id.* ¶ 13.) Both notices are addressed "Dear Employee:". (*Id.* ¶¶ 13, 15.) Likewise, a December 7, 1995 inter-office memo sent to Crowell and addressed to "All Employees" attaches a copy of the 1994 Summary Annual Report for the Pension Plan and states, "We are required, by law, to send this

10

notice to all plan participants." (*Id.* ¶ 19.) A similar mailing was sent to Crowell on December 10, 1996. (*Id.* ¶ 17.) Most clearly, the two 2009 "distribution letters" explicitly state that Crowell has "a benefit due from the Bank of America Pension Plan." (*Id.* ¶¶ 33-34.) A reasonable factfinder could construe these mailings as misrepresentations to Crowell reasonably leading her to believe that she is a Participant in the Pension Plan.

To prove her claim, however, Crowell must also show that these misrepresentations were made by Defendants knowingly and intentionally, and were not just the result of error or "bureaucratic sloppiness." *Downs v. World Color Press*, 214 F.3d 802, 806 (7th Cir. 2000) (quoting *Coker*, 165 F.3d at 585); *see also Kannapien* 507 F.3d at 636. As the Seventh Circuit has made clear, "[a] claim will *not* lie for every false statement reasonably and detrimentally relied upon by an unwitting plaintiff." *Coker*, 16 F.3d at 586 (emphasis in original). In this case, Crowell fails to point to any evidence suggesting that Defendants knowingly misrepresented her status as a Participant in the Pension Plan.

None of the documents cited by Crowell acknowledge that Crowell does not qualify for benefits under the plain language of the Pension Plan, nor do they otherwise establish an explicit exception for Crowell's participation in the Pension Plan. *See Shields*, 188 F.3d at 901 (promise must be "sufficiently definite" to bind the employer). In the case of *Miller v. Taylor Insulation Company*, the Seventh Circuit recognized that "[a]ssurances that one is a participant . . . are unlikely to come from low-level employees." *Miller v. Taylor Insulation Co.*, 39 F.3d 755, 759 (7th Cir. 1994). However, in *Miller* a retiring employee had entered into a ten-year "Consultation and Non-Competition Agreement" explicitly stating that the retiring employee "shall also be entitled to participate in the sick-pay plan." *Id.* at 757. No such promises are evident in this case.

11

The fact that Crowell was sent basic and generic reporting materials such as the "Notices to Interested Parties" and the "Summary Annual Reports" does not reasonably suggest Defendants *intentionally* represented to Crowell that she was a Participant under the terms of the Pension Plan. Rather, even considering the facts in the record in the light most favorable to Crowell, these mailings appear to have been sent to her in error. The evidence before the court shows that LaSalle considered Crowell to be an "LTD Employee," making her eligible for certain benefits, including participation in the "ABN AMRO Group Profit Sharing and Savings Plan" and receipt of health insurance. (Defs.' SMF ¶¶ 25, 26; *see also* Defs.' Ex. A-1, D-0019, D-0021.) The 1998 and 2000 "Notices to Interested Parties" failed to distinguish between the plan for which Crowell was eligible (the "ABN AMRO Group Profit Sharing and Savings Plan") and the plan for which she was not eligible (the Pension Plan). Standing alone, in the absence of any evidence supporting the inference of intent on either Defendant's part to misrepresent any fact to Crowell, this evidence reasonably suggests only "bureaucratic sloppiness." *Coker*, 165 F.3d at 585. Likewise, in light of the plain language of the Pension Plan, it is clear that the "Summary Annual Reports" were also erroneously mailed to Crowell. As noted above, a representative of Bank of America's recordkeeping service has explained that Crowell was "erroneously included" in the 2009 mass mailings, after "former LaSalle employees, including [Crowell], were established in [its] recordkeeping system" on July 1, 2009. (Defs.' SMF ¶ 38; *see also* Defs.' Ex. B ("Giguere Decl.") ¶¶ 6, 9.)

Crowell argues that these documents demonstrate "a reckless an imprudent attitude toward the administration of their benefit plans." (Crowell's Mem. 5.) The court agrees, especially in light of Defendants' argument that "mailing 'everything to everyone' . . . [including] sending documents of each plan to some <u>non</u>-participants" is an acceptable practice

12

and a reasonable method of "cover[ing] the bases" for purposes of "administrative ease." (Defs.' Resp. at 6.) However, that is not the correct standard for an equitable estoppel claim under ERISA. Because no reasonable factfinder could conclude from the record that Defendants knowingly and intentionally misrepresented to Crowell that she is a Participant in the Pension Plan, Crowell cannot satisfy the first element of her equitable estoppel claim.[5]

   B.   Reasonable Reliance

Crowell next argues that she reasonably relied on the various mailings she received in concluding that she was a Participant in the Pension Plan. The reasonable reliance element of ERISA estoppel claims is measured from the perspective of "a reasonable man under all the circumstances pertaining to his condition of employment known or which should have been known to him." *Coker,* 959 F. Supp. at 956 (quoting *Ulrich v. Goodyear Tire & Rubber Co.,* 792 F. Supp. 1074, 1081 (N.D. Ohio 1991)). Defendants note that Crowell knew she never worked for LaSalle as an active or regular employee, that she "apparently has no idea what her hypothetical pension was supposed to be," (Dkt. No. 56 ("Defs.' Mem.") at 15), and that she was never provided with "an estimate of benefits, years of service, and/or specific estimates of payment(s)" as might have been expected. (Dkt. No. 67 ("Defs.' Reply") at 7.) On the other hand, Crowell argues that she "is and was an average person unfamiliar with the legal complexities of employee benefit plans," and that she reasonably "expected to receive her pension, which was repeatedly confirmed by all of the written documentation she received." (Crowell's Mem. 6.)

---

[5] For the sake of completeness, the court addresses each element of Crowell's equitable estoppel claim, despite her failure to satisfy this first element.

The court finds sufficient evidence in the record to create a genuine issue of material fact on this point. The court, however, further finds that Crowell's reliance on the 2009 distribution letters was not reasonable in light of Defendants' stated position in this ongoing litigation.

C. Detrimental Reliance

The final element of Crowell's equitable estoppel claim is detrimental reliance. In equitable estoppel claims brought under ERISA, the element of detrimental reliance requires a showing of economic harm. *Bock v. Computer Associates Int'l, Inc.*, 257 F.3d 700, 711 (7th Cir. 2001). Crowell argues that "[she] had no opportunity to take any steps or action that may have been available to ensure that she would receive her pension." (Crowell's Mem 6.) However, simply "forgoing a meritless claim" does not show detrimental reliance. *Shields*, 188 F.3d at 901. Crowell does not explain what additional actions she would have taken to ensure she received "her pension," and this court is at a loss to imagine any actions Crowell *could have* taken to receive a pension under the Pension Plan. Without a more specific showing of detrimental reliance, Crowell cannot demonstrate a genuine issue of material fact requiring trial on this issue.

D. Extreme Circumstances

Finally, Crowell's assertion that relief should be granted due to "extreme circumstances" fails to take into account the fact that "extreme circumstances" is just the beginning of an equitable estoppel analysis, not the end. The Seventh Circuit has narrowed the scope of equitable estoppel claims in ERISA cases to the point that only "extreme circumstances" can justify a claim for equitable estoppel. *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 639 (7th Cir. 2004). The court is sympathetic to Crowell's frustrations regarding the mishandling of her records by LaSalle and Bank of America. The tone and content of the 2009 distribution letters,

14

in particular, borders on the extreme end of acceptable administration of the Pension Plan. However, as explained above, because Crowell has failed to demonstrate a genuine issue of material fact requiring trial on her equitable estoppel claim, summary judgment is appropriate in favor of Defendants.

## CONCLUSION

Because plaintiff Amelia Patricia Crowell has failed to present evidence suggesting to a reasonable factfinder that the plan administrator's denial of Crowell's claimed pension benefits was arbitrary and capricious, or that Crowell is entitled to benefits under a theory of equitable estoppel, her "Motion for Summary Judgment" (Dkt. No. 50) is denied.  Likewise, because Crowell has failed to demonstrate any genuine issue of material fact that would preclude judgment as a matter of law in favor of Defendants, Defendants' "Motion for Judgment Pursuant to Fed. R. Civ. P. 52; and in the alternative, for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (Dkt. No. 55) is granted in the alternative, and judgment is entered in favor of Defendants pursuant to Federal Rule of Civil Procedure 56.  This case in terminated in its entirety based on the entry of judgment against Plaintiff and in favor of Defendants.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date:  March 9, 2011